HEATHERLY *v*. TRI-STATE MOTOR EXPRESS.

1. MASTER AND SERVANT—INDEPENDENT CONTRACTOR.
    The test of whether relationship is that of an employee or independent contractor is the right to control rather than the actual exercise of control.

2. WORKMEN'S COMPENSATION—INDEPENDENT CONTRACTOR—QUESTION OF FACT.
    In dependents' proceeding to recover workmen's compensation for death of their father who had worked exclusively for defendant employer as a truck driver driving his own truck and who was paid wages independently of the amount allowed as rental for his truck which he maintained and serviced, but for which employer paid cost of liability insurance and certain public service fees, question of whether father was an employee or an independent contractor was one of fact.

3. SAME—DEPARTMENT'S FINDING OF FACT—EVIDENCE—SUPREME COURT.
    Finding of fact by department of labor and industry that dependents' decedent was an employee of defendant employer

rather than an independent contractor, supported by competent evidence, may not be disturbed by the Supreme Court (2 Comp. Laws 1929, § 8451).

4. Same—Injury Arising Out of Employment—Question of Fact —Trucker on Deviation from Route.

Evidence showing that trucker who drove his own truck exclusively for defendant common carrier employer over fixed routes prescribed by public service commission which permitted deviations up to three miles therefrom and who fell from truck while on a deviation from prescribed route but en route to next place where a stop was to be made and between two and three miles therefrom did not foreclose right to claim that trucker was on his master's business at time of accident and sustained department's finding for dependents on question of fact as to whether injury arose out of his employment, especially where there is some evidence that at the time of the injury deceased was not on any private business of his own (2 Comp. Laws 1929, § 8451).

5. Same—Accident—Evidence—Falling from Truck.

Evidence fully sustained claim that deceased trucker came to his death from accidental falling out of truck while on way to deliver merchandise for defendant employer.

Appeal from the Department of Labor and Industry. Submitted January 5, 1943. (Docket No. 18, Calendar No. 42,053.) Decided February 23, 1943. Rehearing denied April 6, 1943. Reconsideration denied June 7, 1943.

Harriet and Irene Heatherly, minors, presented claim for compensation against Michigan Tri-State Motor Express, employer, and Hartford Accident & Indemnity Company, insurer, for death of William G. Heatherly. Award to plaintiffs. Defendants appeal. Affirmed.

*Smitanka, Conlon & Nowak* and *John J. Smolenski,* for plaintiffs.

*Clifford A. Mitts, Jr.,* for defendants.

SHARPE, J.    This is an appeal from the department of labor and industry. Plaintiffs are the minor children of William G. Heatherly who came to his death while in the employ of defendant Michigan Tri-State Motor Express.

The Michigan Tri-State Motor Express is an individually owned business, being conducted under an assumed name. It is engaged in the business of carrying freight as a common carrier under license of the interstate commerce commission and the Michigan public service commission over routes prescribed by the licensing commissions. The deceased, William G. Heatherly, was hired as a driver for defendant. He was to use his own truck for the purpose of delivering and picking up freight on certain prescribed routes allotted to defendant by the Michigan public service commission. He was paid at the rate of $48 a week which included payment for his services as well as rental of his truck. He assumed the cost of maintaining and servicing the truck, but defendant paid the cost of liability insurance and certain public service fees. At the time Heatherly became associated with defendant, he was given a copy of the routes prescribed by the Michigan public service commission and was instructed to follow those routes.

On March 24, 1941, Heatherly left defendant's trucking terminal at Benton Harbor between the hours of 9 and 10 a. m., with a load of meat products to be delivered at Niles, South Bend, Mishawaka, Dowagiac and Decatur. Under the rules of the Michigan public service commission, Heatherly was to follow highway US-31 from Benton Harbor to the Michigan-Indiana State line to South Bend, US-31 from South Bend to Niles, and M-40 from Niles to US-12.

After leaving the terminal, Heatherly picked up Paul Byrd, a helper, to assist him with the deliveries. They made deliveries at Berrien Springs, Niles, South Bend, and Mishawaka. From Mishawaka they returned to Niles and then started from Niles to Dowagiac over M-40, which is the direct route between these two cities. Somewhere between Niles and Dowagiac the driver of the truck left M-40 and got on M-62, a highway running somewhat parallel to M-40. Both of these highways lead into Dowagiac. When the truck reached M-62 it was headed in an easterly direction and was proceeding to Dowagiac for the purpose of making certain deliveries.

Somewhere along M-62, Byrd, the driver of the truck at this time, felt air from an open door and then discovered that Heatherly was missing from the cab. He stopped his truck in less than 200 feet and found Heatherly on the right shoulder of the highway, at a point between two and three miles from Dowagiac. Heatherly was removed to a hospital and died March 27, 1941. A claim was filed for compensation and the department of labor and industry made an award of $17.60 per week together with other items of expense connected with Heatherly's sickness and burial.

Defendants appeal and contend that Heatherly was an independent contractor and as such his dependents are not entitled to the benefits of the compensation act. In *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385 (Ann. Cas. 1918 C, 664), we held that the test of whether a relationship is that of an employee or independent contractor is the right to control rather than the actual exercise of control. In this connection we note that Heatherly was hired to use his truck to make daily deliveries. He was paid wages of $26.40 per week and the truck rental

was for the balance of the $48 that he received weekly. His duties were to work until each trip was completed. He worked exclusively for the defendant and he handled no other freight.

In *Marchand* v. *Russell*, 257 Mich. 96, Russell, a traveling sales representative and promotional worker of the Detroit Electric Company, was involved in an accident. One of the questions before the court was whether Russell was an agent or servant of the company, or an independent contractor. We there said (p. 102):

"It has been many times said that the right to control, not only as to the result to be accomplished, but also as to the means to be used, is decisive of the relation existing. This rule may well be applied where a specified piece of work is to be done, as was the case in *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385 (Ann. Cas. 1918 C, 664), and in *Dennis* v. *Sinclair Lumber & Fuel Co.*, 242 Mich. 89. But an official of the company could not very well be present and exercise control over Russell in the performance of his work. * * * Actual interference with the control need not be shown if the right to exercise it exists."

In our opinion the claim made by plaintiffs that their decedent was an employee and not an independent contractor presents a disputed question of fact. The finding of fact made by the department of labor and industry is supported by competent evidence. Under such circumstances we may not disturb the finding so made. See 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186).

It is next urged by defendant that the injury did not arise out of the employment as deceased had deviated from the prescribed route, at the time of his injury and had not returned to the designated highway. It is undisputed that deceased was in-

jured while within three miles of Dowagiac; that the route established by the Michigan public service commission from Niles to Dowagiac was over M-40 and that deviations up to three miles were permitted; that deceased was on a highway known as M-62 at the time of his fatal injury; that the route taken was longer than the direct route from Niles to Dowagiac over M-40; and that at the time of the accident deceased was on his way to Dowagiac. There is some evidence that at times defendant ordered deceased to deviate from the route in order to make certain deliveries; and that at the time of the injury deceased was not on any private business of his own.

The department of labor and industry made the following finding of fact:

"The record does not clearly indicate why the deceased deviated from the prescribed route. It is possible he left that route for reasons not associated with his employment, but in any event at the time of his injury he had again commenced upon his employment as he was driving towards Dowagiac only two miles away and he had deliveries to make in Dowagiac. He was clearly in the course of his employment at that time. There was no causal relationship between his injury and the fact that he was driving on M-62 rather than M-40."

In *Dennis* v. *Sinclair Lumber & Fuel Co.*, 242 Mich. 89, John Dennis owned a truck. He delivered coal and building material for his employer at an agreed compensation per ton of coal and load of material. At the time he was injured he was returning to the lumber yard, although not pursuing the most direct route. We there said:

"Mr. Dennis was in the course of his employment in returning to the place of his employer, even

though not at the time of the accident pursuing the most direct route; there being some evidence showing road conditions justifying his course and nothing to show he was about any private affair."

We have said that where no route is specified, and the driver, in the exercise of his judgment, selects a feasible one, even though it is not the shortest, there would be no deviation because the owner impliedly consented to whatever feasible route the driver selected. In the case at bar, the Michigan public utility commission permitted a so-called deviation of not to exceed three miles from the routes specified for the purpose of making deliveries. Prior to the happening of the accident, deceased had made such deviations at the request of his employer. In the case at bar, deceased was on a route less than three miles from the point where he was to make a delivery of supplies. It must be said that his only purpose in going to Dowagiac was in furtherance of his master's business. In such a case a so-called deviation of a less distance than that permitted by the Michigan public service commission is not such a deviation as would foreclose his right to claim that he was upon his master's business at the time of the accident. A question of fact was presented as to whether or not Heatherly's injury arose out of his employment. There is evidence to sustain the finding of the department upon this question.

Defendants also urge that there is no proof of an accidental injury to Heatherly. We note that in the proceedings before the deputy commissioner it was admitted by Mr. Mitts, attorney for defendants, that Heatherly's death was due to the injury received from falling out of the truck. The evidence in this

case fully sustains the claim that deceased came to his death from the accidental falling out of a truck while on his way to deliver merchandise for his employer.

The award is affirmed, with costs to plaintiffs.

BOYLES, C. J., and CHANDLER, NORTH, STARR and BUSHNELL, JJ., concurred with SHARPE, J. WIEST and BUTZEL, JJ., concurred in the result.